United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO RODRIGUEZ,<br><br>    Petitioner,<br><br>    v.<br><br>G. J. WANDA, Warden,<br><br>    Respondent.<br>_____/ | No. C-13-0015 EMC (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## I.    INTRODUCTION

Antonio Rodriguez, a state prisoner at Mule Creek State Prison, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his 2010 convictions for lewd and lascivious acts upon two children and the resulting sentence. The petition is now ready for a decision on the merits. For the reasons discussed below, the petition is **DENIED**.

## II.    BACKGROUND

A.    <u>The Crimes</u>

The California Court of Appeal summarized the evidence of the crimes presented at trial:

> A. Prosecution case
> 1. The victims' testimony
>
> Victim 1, who was nine years old at the time of trial, met Rodriguez at the church she attended with her mother and twin sister, victim 2. When victim 1 was seven years old, she would sometimes go to Rodriguez's house to watch "[k]id movies." While in the living room, Rodriguez touched victim 1 "in the wrong places" and rubbed her "coochie" with his hand. He told victim 1, "You are wet."

Victim 2 testified that, on Thanksgiving that year, Rodriguez touched her "private" in the living room at her mother's friend's house. Victim 2 was at the house with her mother and victim 1. While she was on the couch watching television, holding a pillow in her lap, Rodriguez put his hand under the pillow and touched her underneath her underwear.

A month later, around Christmas, victim 1 spent the night at Rodriguez's house with her mother and her sister. When her mother and sister were asleep, Rodriguez took victim 1's hand and made her rub his "weenie." He moved her hand up and down about five times, and she described it as feeling big, smooth and squishy. Victim 1 said she told her mother about the incidents about two days after they occurred.

2. Mother's testimony

The victims' mother admitted she had been convicted in 2004 for possession of stolen property and child endangerment. As a result of those criminal charges, in 2005 she lost custody of victim 1 and victim 2 for a period of 18 months. She completed an out-patient program and began attending the "Celebrate Recovery" program at a church in Salinas as part of her recovery process. It was at that church she met Rodriguez, who was also in recovery, in 2006. The mother heard rumors that Rodriguez was on the Megan's Law Website, but another woman at the church told her it was probably for relieving himself in public. The mother trusted Rodriguez and did not investigate further because he was a "brother in Christ." The mother said that Rodriguez wanted to date her, although she was not interested, and the program also had a rule against fraternization. Rodriguez would sometimes walk her to her car and bring gifts for her children to the meetings.

On one occasion about a month before Thanksgiving, she left her daughters at Rodriguez's house for several hours for him to babysit. When she returned, her daughters were both naked, and Rodriguez told her that they had wanted to take a bath. The mother did not report this incident to the police.

She recalled visiting Rodriguez's house with her twin daughters on two occasions in 2008. Around Christmas that year, she and her daughters went to his house to watch movies and they ended up sleeping over. She slept on the floor, with Rodriguez next to her, while the girls slept on the couch. FN3

> FN3. The mother subsequently recalled that she started off sleeping on the couch with her daughters, then moved to the floor.

Two days later, her daughters told her something had happened. Victim 1 told her Rodriguez had touched her on Thanksgiving while they were at Rodriguez's sister's house. Victim 2 also said that Rodriguez had touched her. The mother "went into shock," and did not contact police right away. She spoke to the ministry leader, who was also Rodriguez's sponsor, about how to handle the situation. The

**United States District Court**
For the Northern District of California

2

mother had "just gone through a lot with [her] children[, and was] not ready to go through this again."

After being assured that everything would be all right, the mother contacted the police, who took a report on January 16, 2009. Salinas Police Officer Craig Fairbanks arranged for the mother to place a recorded pretext call to Rodriguez.

3. Pretext phone call

The jury heard the recorded pretext call, and a transcript of that recording was admitted into evidence. In that call, the mother asked Rodriguez several times to explain why he touched her daughters. Rodriguez never admitted doing so, and said it sounded as if the mother was trying to "set [him] up." He said he would be going to another church in the future because seeing the mother "would just create more problems." Rodriguez said he wanted to have his sponsor with him if the mother wanted to talk more because he did not trust her. He agreed with the mother that her daughters were innocent and "really smart." Rodriguez told the mother nothing he could say to her would satisfy her. He said he did not think she should make a report to the police, but she should tell her daughters "[n]ot to give up on God, not to stop going to church and, ... they are innocent." When the mother asked if she could tell the girls Rodriguez would not touch them again and that he was sorry, he said, "Of course." He then added "[Y]ou can say that, you can (inaudible) whatever else you wanna ... okay?"

4. Prior victim's testimony

The prior victim testified that on one occasion when she was four or five years old, her aunt was watching her, and for some reason, they ended up at Rodriguez's mother's house. While she was there, Rodriguez put something inside her vagina. He told her not to tell anyone, and said her mother would not love her anymore if she did. After watching a Winnie the Pooh cartoon about not talking to strangers, she told her babysitter what had happened. The prior victim talked to police and testified against Rodriguez in court when she was six or seven. In that proceeding, Rodriguez was charged with committing a lewd act on a child under the age of 14 (§ 288, subd. (a)) on December 23, 1987. It was stipulated that Rodriguez pleaded no contest to that charge.

B. Defense case

Rainia Ishak, who also attended Celebrate Recovery, had Rodriguez, the mother, and some other friends over for Thanksgiving dinner in November 2008. The mother brought her daughters, victim 1 and victim 2, as well. Ishak's house had an open floor plan and one could see into the kitchen from the living room, and vice versa. When the mother arrived with her children, Rodriguez went to greet her. Ishak noticed the mother rolled her eyes and had a "[g]et the hell away from me" look on her face. Throughout the day, Ishak saw Rodriguez with the two girls, and they were friendly towards him, exchanging lots of hugs. She saw the girls sitting on his lap in the living room, but neither of them appeared uncomfortable in any way.

> Janet Jimenez, the defense investigator, interviewed the mother and the two victims. Jimenez talked to each of the victims separately, though the mother was present during each interview while the other victim waited in a separate room. Victim 1 told Jimenez that Rodriguez only touched her on one occasion, at his house, while they were sitting on the couch in his living room. Victim 1 did not tell Jimenez that Rodriguez ever took her hand and put it on his penis.
>
> Victim 2 told Jimenez that Rodriguez touched her between her legs while she was sitting on his lap in the living room of Ishak's house on Thanksgiving. Victim 2 said she had a pillow on her lap at the time and Rodriguez reached under her skirt and underwear and rubbed his hand "down the middle of her legs one time."
>
> Jimenez said the mother told her there were rumors at her church that Rodriguez was a "pedophile and a weirdo," but she ignored those rumors since her church teaches her not to heed gossip. The mother said she and her daughters had gone out to dinner with Rodriguez three or four times, he had visited at her house about six times and she visited his home about three times. The mother did not tell Jimenez about the incident where she left her daughters with Rodriguez to babysit and came back to find them naked.

*People v. Rodriguez*, 2012 WL 160222 *1-3 (Cal. App. 6 Dist. 2012); Resp. Ex. B at pp. 2-6

B.  Procedural History

At a jury trial in Monterey County Superior Court, Rodriguez was found guilty of two counts of lewd and lascivious acts upon a child (Pen.Code, § 288, subd. (a)). The jury also found true the allegations that these offenses were committed against multiple victims (§ 1203.066, subd. (a)(7), § 667.61, former subd. (e)(5) (now subd. (e)(4))). In a bifurcated proceeding, the court found that Rodriguez had a prior conviction for committing a lewd act on a child (§ 667.61, subd. (d)(1)), was a habitual sexual offender (§ 667.71), had a prior strike (§ 1170.12) and had two prior serious felony convictions (§ 667, subd. (a)(1)). Rodriguez was sentenced to a total term of 170 years to life.

Rodriguez timely appealed. The California Court of Appeal modified the judgment by striking a stayed 15 year to life term, but affirmed the judgment in all other respects. The California Supreme Court denied review. Resp. Ex. D. Rodriguez filed his federal petition for writ of habeas corpus. The Court issued an order to show cause why the petition should not be granted. Respondent has now filed an answer, though Rodriguez declined to file a traverse. The matter is ready for a decision on the merits.

4

### III. STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism And Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

### IV. DISCUSSION

Rodriguez argues that: (1) the admission pursuant to California Evidence Code § 352 and § 1108 of evidence of a 1987 sex offense to prove propensity violated his rights to due process, a fair

trial and equal protection; (2) the CALCRIM No. 1191 jury instruction regarding a prior sex offense violated his due process right to proof beyond a reasonable doubt; and (3) the 170 year to life sentence was cruel and unusual punishment prohibited by the Eighth Amendment. The Court will address each claim in turn.

A.  Propensity Evidence

Rodriguez argues that the admission of evidence regarding the 1987 sex offense to prove propensity violated his rights to due process, a fair trial and equal protection.

The United States Supreme Court has left open the question of whether admission of propensity evidence violates due process. *Estelle v. McGuire*, 502 U.S. 62, 75 n. 5 (1991). Based on the Supreme Court's reservation of this issue as an "open question," the Ninth Circuit has held that a petitioner's due process right concerning the admission of propensity evidence is not clearly established as required by AEDPA. *Alberni v. McDaniel*, 458 F.3d 860, 866-67 (9th Cir. 2006); *see*, *e.g.*, *Larson v. Palmateer*, 515 F.3d 1057, 1066 (9th Cir. 2008) (because Supreme Court expressly reserved the question of whether using evidence of prior crimes to show propensity for criminal activity could ever violate due process, state court's rejection of claim did not unreasonably apply clearly established federal law). Nor has the Supreme Court ruled that propensity evidence violates equal protection. *See, e.g., United States v. LeMay*, 260 F.3d 1018, 1030-31 (9th Cir. 2001) ("[s]ex offenders are not a suspect class."). In addition, this circuit has held that the admission of prejudicial evidence may violate due process, but "[o]nly if there are no permissible inferences the jury may draw from the evidence." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991). The Ninth Circuit has also held that Federal Rule of Evidence 414, which allows evidence of prior sexual offenses to show a propensity to commit the charged sexual offense in federal criminal cases, does not violate equal protection or due process. *LeMay*, 260 F.3d at 1031.[1]

Here, the state appellate court concluded that according to California Evidence Code § 352 and § 1108, the evidence was properly admitted and relevant. *People v. Rodriguez*, 2012 WL

---

[1] Federal Rule of Evidence 414 changed the general rule of evidence which disallows admission of a defendant's prior crimes or acts to prove character and makes such evidence admissible with respect to child molestation cases.

160222 *4-7. The prior case involved the molestation of a girl who was four or five, while the instant case involved seven year old girls and there was other similar conduct. The state court held this evidence was relevant despite the remoteness of when it occurred stating, "[w]e also observe that, though the remoteness of a prior offense is an appropriate factor in weighing probative value against potential prejudice, there is no bright-line rule for determining when remoteness eliminates the probative value of a prior offense." *Rodriguez*, 2012 WL 160222 *6. To the extent that Rodriguez argues that state law was incorrectly applied, any such claim is denied. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." (citations omitted)).

     Rodriguez has failed to show that the state court decision was contrary to established Supreme Court authority. As noted above the Supreme Court has not ruled that propensity evidence violates due process or equal protection and the Federal Rules of Evidence allow for such evidence. Thus, the state court decision cannot be AEDPA unreasonable. Finally, even assuming the propensity evidence was improperly admitted, the error did not have 'substantial and injurious effect' on the verdict. *See Plascencia v. Alameida*, 467 F.3d 1190, 1203 (9th Cir. 2006) (applying *Brecht v. Abrahamson*, 507 U.S. 619 (1993) harmless error analysis to claim that admission of evidence was improper). The two current victims testified regarding the molestation and the jury credited that testimony, so any error regarding the propensity evidence did not have an effect on the verdict. In addition, because there were permissible inferences the jury could draw from the testimony of the prior victim, the admission of the propensity evidence did not violate due process. *See Jammal*, 926 F.2d at 920. For all these reasons, Rodriguez is not entitled to relief on this claim.

B.    <u>Jury Instruction</u>

     Rodriguez argues that the jury instruction regarding the prior sex offense violated his due process right to proof beyond a reasonable doubt. The jury was instructed with CALCRIM No. 1191 regarding the prior sex offense. The instruction stated:

> The People presented evidence that the defendant committed the crime of Lewd or Lascivious acts on a child under 14 that was not charged in this case. The crime is defined for you in these instructions. [¶] You may consider the evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offenses. Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true. [¶] If the People have not met this burden of proof, you must disregard this evidence entirely. [¶] If you decide that the defendant committed the uncharged offense, you may, but are not required to, conclude from that evidence the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit and did commit the crimes of Lewd or Lascivious act on a child under the age of 14 in Counts 1, 2, and 4 as charged here. *If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove the defendant is guilty of the crimes charged. The People must still prove each charge beyond a reasonable doubt.*

Clerk's Transcript ("CT") at 292 (emphasis added).[2]

The Due Process Clause of the Fourteenth Amendment protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged. *In re Winship*, 397 U.S. 358, 364 (1970). This constitutional principle prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime. *See Yates v. Evatt*, 500 U.S. 391, 400-03 (1991), overruled on other grounds. But instructions that lessen the prosecution's burden will be subject to harmless error review, rather that structural error review, "unless all the jury's findings are vitiated." *Byrd v. Lewis*, 566 F.3d 855, 866 (9th Cir. 2009) (citing *Hedgpeth v. Pulido*, 555 U.S. 57, 61 (2008)).

In reviewing an ambiguous instruction, the inquiry is not how reasonable jurors could or would have understood the instruction as a whole; rather, the court must inquire whether there is a "reasonable likelihood" that the jury has applied the challenged instruction in a way that violates the Constitution. S*ee Estelle v. McGuire*, 502 U.S. 62, 72 & n.4 (1991); *see, e.g., Mejia v. Garcia*, 534

---

[2] The oral instruction provided by the trial court also tracked and was substantially similar to this written instruction. Reporter's Transcript ("RT") at 2556-57.

F.3d 1036, 1045 (9th Cir. 2008) (finding an instruction previously found to allow for conviction of sex offense on less than proof beyond a reasonable doubt ambiguous with regard to non-sexual offenses where "reasonable minds can differ in their reading").

The state appellate court denied this claim:

> Rodriguez contends this instruction was improper because, by inviting the jury to find the uncharged offense true by a preponderance of the evidence (rather than beyond a reasonable doubt), it conflicted with the reasonable doubt instructions. The jury may have convicted Rodriguez here based upon the lesser standard of proof or based solely upon finding that he had committed the uncharged crime.
>
> The California Supreme Court rejected the same arguments in connection with the 1999 version of CALJIC No. 2.50.01, which was substantially similar to CALCRIM No. 1191. (*People v. Reliford* (2003) 29 Cal.4th 1007, 1012–1016 (*Reliford*).) In *Reliford*, the court held, "We do not find it reasonably likely a jury could interpret the instructions to authorize conviction of the charged offenses based on a lowered standard of proof. Nothing in the instructions authorized the jury to use the preponderance-of-the-evidence standard for anything other than the preliminary determination whether defendant committed a prior sexual offense.... The instructions instead explained that, in all other respects, the People had the burden of proving defendant guilty 'beyond a reasonable doubt.' [Citations.] Any other reading would have rendered the reference to reasonable doubt a nullity." (*Id.* at p. 1016.)
>
> *Reliford* also held that the instruction did not allow the jury to rest a conviction solely on evidence of the uncharged offenses. To the contrary, the instruction specifically provided that if the jury found by a preponderance of the evidence that the defendant committed the uncharged offense, "'that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crime.'" (*Reliford*, supra, 29 Cal.4th at p. 1013.) These instructions, the court concluded, "could not have been interpreted to authorize a guilty verdict based solely on proof of uncharged conduct." (Ibid.)
>
> Relying upon *Reliford*, *People v. Cromp* (2007) 153 Cal. App. 4th 476 (*Cromp*), rejected a due process challenge to CALCRIM No. 1191. Although CALCRIM No. 1191 is written in plainer language, *Cromp* held that it was substantially identical to CALJIC No. 2.50.01: "[T]here is no material difference in the manner in which each of the instructions allows the jury to conclude from the prior conduct evidence that the defendant was disposed to commit sexual offenses and, therefore, likely committed the current offenses. CALCRIM No. 1191, as given here, cautions the jury that it is not required to draw these conclusions and, in any event, such a conclusion is insufficient, alone, to support a conviction. Based on *Reliford*, we therefore reject defendant's contention that the instruction violated his due process rights." (*Cromp*, supra, at p. 480.)

> The 1999 version approved by *Reliford*, supra, 29 Cal.4th 1007, and the version of CALCRIM No. 1191 given here, both include the requisite admonition. Accordingly, we must reject the constitutional challenge to CALCRIM No. 1191. (*Auto Equity Sales, Inc. v. Superior Court*, supra, 57 Cal.2d 450, 455.)

*Rodriguez*, 2012 WL 160222 *7-8.

Rodriguez' petition provides no additional arguments in support of this claim. However, it appears he is relying on *Gibson v. Ortiz*, 387 F.3d 812 (9th Cir. 2004), overruled in part by *Hedgepeth v. Pulido*, 555 U.S. 57, 60 (2008), as recognized in *Byrd v. Lewis*, 566 F.3d 855, 866–67 (9th Cir. 2009). In *Gibson*, the Ninth Circuit held that an unmodified 1996 version of CALJIC No. 2.50.01 (which unlike CALCRIM No. 1191 in this case did not include any language prohibiting a finding of guilt based solely on the other uncharged acts), in tandem with a modified version of an instruction regarding the preponderance of the evidence standard, unconstitutionally lowered the prosecution's burden of proof for the charged sexual offenses to a preponderance of the evidence standard. *Id*. at 822-23.

However, the instruction in the instant case, CALCRIM No. 1191, is a modified version of CALJIC No. 2.50.01 in *Gibson*. While similar to *Gibson*, the instruction here contains some language which, if read in isolation, could lead the jury to find the defendant guilty based on the uncharged offense. However, the instruction contains clarifying language (the last three sentences) that there must be guilt beyond a reasonable doubt for the charged offense, and the commitment of the uncharged offense if found to be true, is just one factor to consider and is itself not sufficient to prove guilt. This clarifying language was missing from the instructions in *Gibson*.

The Ninth Circuit has upheld another version of the instructions. In *Schultz v. Tilton*, 659 F.3d 941 (9th Cir. 2011), the court held that "the California Court of Appeal did not act contrary to federal law in applying the analysis from *Reliford* to uphold the 2002 version of CALJIC No. 2.50.01." *Id*. at 945. Distinguishing the 2002 version of CALJIC No. 2.50.01 from the 1996 version at issue in *Gibson*, the Ninth Circuit stated that the 2002 version "in no way suggest[ed] that a jury could reasonably convict a defendant for charged offenses based merely on a preponderance of the evidence," but rather "made clear that Schultz could be convicted only if the evidence as a whole

"proved [him] guilty beyond a reasonable doubt of the charged crime." *Id*. To be sure, the instruction in *Schultz* is different than the jury instruction here. It did not contain the potentially confusing language discussed above. However, as noted by the state appellate court herein, the final three sentences of the jury instruction clarified and eliminated the potential ambiguity as to the burden of proof.

To succeed on this claim, Rodriguez must demonstrate the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. *Woodford v. Viscotti*, 537 U.S. 19, 25 (2002). Specifically, Rodriguez "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011). This Court cannot conclude that the state appellate court's decision in finding the instruction constitutional was objectively unreasonable. It is reasonable for the state court to conclude that the instruction adequately maintained and conveyed to the jury the proper burden of proof. *See Mejia v. Garcia*, 534 F.3d at 1045. Rodriguez is therefore not entitled to relief on this claim.

C.  Eighth Amendment Sentencing Violation

Petitioner next argues that his sentence of 170 years to life in prison is cruel and unusual punishment in violation of the Eighth Amendment.

"The Cruel and Unusual Punishments Clause prohibits the imposition of inherently barbaric punishments under all circumstances." *Graham v. Florida*, 130 S. Ct. 2011, 2021 (2010). The Eighth Amendment contains a "narrow" proportionality principle. *Graham*, 130 S. Ct. at 2021. This principle "does not require strict proportionality between crime and sentence," but rather forbids only "extreme sentences that are grossly disproportionate to the crime." *Id*.; *see Solem v. Helm*, 463 U.S. 277, 303 (1983) (sentence of life imprisonment without possibility of parole for seventh nonviolent felony violates 8th Amendment). "[O]utside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare." *Solem*, 463 U.S. at 289-90; *see also Crosby v. Schwartz*, 678 F.3d 784, 795 (9th Cir. 2012) ("Circumstances

satisfying the gross disproportionality principle are rare and extreme, and constitutional violations on that ground are 'only for the extraordinary case.'") (citing *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003)). In analyzing a disproportionality challenge to a specific sentence, the court "considers all of the circumstances of the case to determine whether the sentence is unconstitutionally excessive." *Graham*, 130 S. Ct. at 2021.[3]

The state appellate court denied this claim:

> Both the federal and state Constitutions proscribe cruel and unusual punishment by prohibiting punishment that is grossly disproportionate to the severity of the offense. (U.S. Const., 8th Amend.; Cal. Const., art. I, § 17; *Harmelin v. Michigan* (1991) 501 U.S. 957, 1001; *People v. Marshall* (1990) 50 Cal.3d 907, 938 .) The United States Supreme Court has expressly found that California's three strikes law does not violate the Eighth Amendment in *Ewing v. California* (2003) 538 U.S. 11 (*Ewing*). The Supreme Court explained that in enacting the three strikes law, the California Legislature made a judgment "that protecting the public safety requires incapacitating criminals who have already been convicted of at least one serious or violent crime. Nothing in the Eighth Amendment prohibits California from making that choice." (*Id.* at p. 25.) In addressing the gravity of the offense compared to the harshness of the penalty, the Supreme Court emphasized that the gravity of the defendant's offense included not only his current felony, but also his history of felony recidivism. (Id. at p. 29.)
>
> In analyzing the separate prohibition against cruel or unusual punishments provided in the California Constitution, the California Supreme Court has said that a sentence will violate the state Constitution if "it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424.)
>
> Rodriguez argues that his punishment "is grossly and unnecessarily excessive," apparently because his sentence of 170 years to life is far

---

[3] The Supreme Court and Ninth Circuit have upheld life sentences for crimes less serious than murder as in this case. *See e.g.*, *Ewing v. California*, 538 U.S. 11, 29–31 (2003) (upholding sentence of 25–year–to–life for recidivist convicted most recently of grand theft); *Lockyer*, 538 U.S. at 66, 77 (2003) (upholding sentence of two consecutive terms of 25–years–to–life for recidivist convicted most recently of two counts of petty theft with a prior conviction); *Harmelin*, 501 U.S. at 994-96 (upholding sentence of life without possibility of parole for first offense of possession of 672 grams of cocaine); *Nunes v. Ramirez–Palmer*, 485 F.3d 432, 439 (9th Cir. 2007) (upholding sentence of 25–years–to–life for the underlying offense of petty theft with a prior conviction after finding petitioner's criminal history was longer, more prolific, and more violent than the petitioner's in *Andrade*, who suffered a harsher sentence); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 508 (9th Cir. 1994) (sentence of ineligibility for parole for 40 years not grossly disproportionate when compared with gravity of sexual molestation offenses).

> in excess of a person's usual lifespan. He claims that such a sentence cannot possibly contribute to "either a utilitarian or retributive theory of punishment."
>
> We disagree that Rodriguez's sentence constitutes cruel and unusual punishment, given his criminal history, which now includes three convictions for committing lewd or lascivious conduct on a child under 14. His first victim was five years old, the most recent victims only seven, and the circumstances show that in each case, he took advantage of a position of trust to accomplish his intent. Accordingly, we cannot view his current punishment as a recidivist under the Three Strikes law as grossly disproportionate to his crimes. We thus conclude that his sentence does not constitute cruel and unusual punishment under either the federal or state Constitutions.

*Rodriguez*, 2012 WL 160222 *12-13.

Although Rodriguez received a lengthy sentence, there is no basis for finding that it is grossly disproportionate to his offenses. He was found guilty of committing lewd and lascivious acts upon two different children who were seven years old. He had two prior serious felony convictions that included a prior sexual offense against a four or five year old and a first degree burglary conviction. As set forth above, the Supreme Court has found that life sentences for recidivists whose most recent crimes included nonviolent drug possession (*Harmelin*), grand theft (*Ewing*), or two counts of petty theft (*Lockyer*) did not violate the Eighth Amendment. Based on Rodriguez's sexual offense convictions in this case and his prior crimes, he cannot demonstrate a constitutional violation nor was the state court's rejection of this claim an unreasonable application of Supreme Court authority. Accordingly, this claim is denied.

///
///
///
///
///
///
///
///
///

## V. CONCLUSION

The petition for writ of habeas corpus is **DENIED** on the merits. A certificate of appealability will issue solely for the jury instruction claim. *See* 28 U.S.C. § 2253(c). It is possible "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Clerk shall close the file.

IT IS SO ORDERED.

Dated: December 11, 2013

_____
EDWARD M. CHEN
United States District Judge